UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:06-cv-519 (WWE) |
| | : | |
| RICHARD LASCHEVER, individually, | : | |
| GREENPOINT MORTGAGE FUNDING INC., | : | |
| a corporation, and NATIONAL CITY | : | |
| WAREHOUSE RESOURCES, a division of | : | |
| NATIONAL CITY BANK, a corporation, | : | |
|     Defendants. | : | |

**MEMORANDUM OF DECISION ON DEFENDANT NATIONAL CITY WAREHOUSE RESOURCES' MOTION TO STRIKE AND PLAINTIFF WESTPORT INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

This action arises from an insurance contract between plaintiff Westport Insurance Corporation, as insurance provider, and defendant Richard Laschever, as the insured. Westport seeks rescission of the contract. Now pending before the Court are defendant National City Warehouse Resources'[1] Motion to Strike various exhibits (Doc. #64) and plaintiff's Motion for Summary Judgment (Doc. #54). For the following reasons, the motion to strike will be granted in part and denied in part, and the motion for summary judgment will be denied.

The Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C. § 1332.

---

[1] Although Laschever has not filed a response to the motion for summary judgment despite the Court's instruction to do so (Doc. #76), the Court nonetheless accepts National City's response to the motion on his behalf because the content of the response indicates corresponding interests between those two defendants. See Nationwide Mut. Ins. Co. v. Alston, 2008 U.S. Dist. LEXIS 13659 (E.D. Pa. Feb. 25, 2008).

## BACKGROUND

The parties have submitted briefs, a stipulation of facts and supporting exhibits, which reflect the following factual background.

Plaintiff Westport Insurance Corporation is an insurance provider located in Overland Park, Kansas.

Defendant Richard Laschever is an attorney with an office in East Hartford, Connecticut. At the time of the events of this case, Laschever was associated with Matrix Investment Corporation located in Groton, Connecticut.

On May 20, 2005, Laschever submitted a Claims-Made and Reported Basis Insurance Application to Westport seeking professional liability coverage.

Question 8 of the Application's General Information Section asked:

> Has any application for Lawyers Professional Liability Insurance on behalf of your firm, its predecessor firms or any lawyer proposed for this insurance been declined, cancelled or non-renewed for a reason other than the carrier is no longer writing this line of business?

Laschever answered "no" to this question as well as to an identical question in the Application's Supplemental Questions for Lawyers.

Question 9 of the Application's General Information Section asked:

> In the past five years, has any action been taken against any lawyer proposed for this insurance for disbarment, suspension, reprimand, or other disciplinary action?
>
> **Please include any pending actions.**
>
> If yes, provide a copy of the action pending or taken by the disciplinary body.

Laschever answered "no" to this question. Question 9 of the Application's

Supplemental Questions for Lawyers asked:

> Has any action been taken against any lawyer proposed for this insurance for any of the following **[INCLUDE PENDING ACTION(S)]**: disbarment; suspension; reprimand; or other disciplinary action?
>
> **If yes, provide a copy of the action pending or taken by the disciplinary body.**

Laschever answered "no" to this question as well.

Question 10 of the Application's General Information Section and the Application's Supplemental Questions for Lawyers both asked:

> After inquiry of all lawyers and employees, have any claims, suits, or demands been made during the past five years against the Applicant, its predecessor firms or any of the lawyers proposed for this insurance?

Laschever answered "yes." The latter section asked for the total number of open and closed claims, to which Laschever replied "one." Laschever disclosed a "Claim pending brought by refinance individuals, related to right of rescission. Roudeboush v. Laschever et. al Sup. Ct New London (transferred to Complex Lit Docket New Britain)."

Question 1 of the Application's Financial Institution Supplemental Questions asked, "What type of financial institution work does the Applicant perform?" Laschever marked the box for "Loan Closing, Repossessions and Foreclosures." Question 3 of the same section asked:

> Is any institution which the Applicant represents or has represented within the last five years currently or been previously under regulatory review by any state or government agency or had any action taken against them?

Laschever indicated "no."

Question 11 in the General Information section of the Application asked:

> [I]s the Applicant ... aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of a claim or suit for lawyers or title agents professional liability?

Laschever left the answer to this question blank as well as to the corresponding question in the supplemental questions for lawyers section of the Application. Laschever indicated that he did not answer these questions because he intended to do so at a later time before submitting the Application but never did. Laschever left other answers blank in the Application, which are not relevant to the instant matter. Westport did not contact Laschever regarding these omissions.

The Application executed by Laschever provided:

> The undersigned represents and warrants that the statements set forth herein are true, complete and accurate and that there has been no attempt at suppression or misstatement of any material facts known, or which should be known, and agrees that this application shall become the basis of any coverage and a part of any policy that may be issued by the Company.

Laschever signed and dated the Application as of May 20, 2005. Below Laschever's signature, it provided:

> The applicant understands and agrees that she or he is obligated to report any changes in the information provided in this application that occur after the date of the application and before policy inception.

Westport issued a Claims-Made and Reported Policy No. WLW307004620500 for the period July 17, 2005 through July 17, 2006. The General Terms and Conditions of the Policy conditioned acceptance of the Policy on Laschever reaffirming that:

> as of the effective date of this POLICY, that (1) the statements in the application(s) and all information communicated by the

4

> INSUREDS to the Company, and all INSUREDS' agreements and representations are true and accurate, (b) this POLICY is issued in reliance upon the truth and accuracy of such representations which are material to the Company's issuance of this POLICY and (c) this POLICY embodies all agreements between all INSUREDS and the Company or any of its agents relating to this insurance. No representations by any person shall have any force or effect, except as included within this agreement. Notwithstanding any provision in the policy or application, the application should not be considered part of the policy.

The policy's reporting and notice provision provided that:

> As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED shall, as soon as practicable, but no later than 60 days after termination of the POLICY PERIOD, provide written notice to the Company.

The phrase "as soon as practicable" is not defined in the policy.

**I.     The Keith Matter**

Laschever had acted as a settlement agent in connection to a mortgage loan provided by Matrix Investment Corporation to John W. Keith. The closing for this loan occurred on April 18, 2005. On May 25, 2005, Attorney Charles Norris, on behalf of Keith, filed a grievance ("Grievance") against Laschever with the Connecticut Statewide Grievance Committee arising out of Laschever's actions in connection with the closing of the mortgage loan. Laschever provided a substantive answer to the Grievance on June 27, 2005.

On July 1, Norris sent Laschever a letter regarding the outstanding claims by Keith against Laschever ("Keith Demand"). Norris's letter alleged that Laschever had violated various federal and state statutes and regulations. Norris offered to settle the

5

dispute for $20,000.[2]

Laschever notified Westport of the Keith Demand by letter dated September 6, 2005, in which he stated that the delay in sending notice of this action to Westport was because he was "determining if MATRIX Investment Corporations Professional Liability Policy ... would afford me coverage."

National City argues, citing the deposition of Westport's underwriter, Stephen Lang, and Westport's underwriting guidelines ("Guidelines"), that there is no clear course of action for how Westport would have responded in approving Laschever's application had it been aware of the Keith Demand and Grievance.

## II. Philadelphia Insurance Matter

In his original application with Westport, Laschever indicated that he was insured by Philadelphia Indemnity Insurance Company ("Philadelphia") from July 17, 1998 to July 17, 2000 through two one-year policies. On July 23, 2000, Philadelphia filed a suit against Laschever seeking rescission of the policy and a declaration that Philadelphia need not provide coverage to Laschever because of alleged misrepresentations in his application. Such action was dismissed upon stipulation of the parties.

Westport claims that had Laschever disclosed the Philadelphia suit, it would not have insured Laschever for the initial 2003-2004 policy.

---

[2] The Grievance was resolved after the Policy became effective. In addition, on or about August 9, 2005, Keith filed a complaint against Laschever and Matrix in Connecticut Superior Court alleging that Laschever failed to disburse funds from his refinancing as required under Connecticut law.

6

### III. Laschever's Work for Matrix

In May 2002, Laschever began working as part-time counsel for Matrix.

On July 29, 2005, the Commissioner of the Connecticut Department of Banking issued an Order of Summary Suspension, Notice of Intent to Revoke First Mortgage Correspondent Lender/Broker and Secondary Mortgage Correspondent Lender/Broker Licenses, Notice of Intent to Impose Civil Penalty and Notice of Right to Hearing with respect to Matrix. This Order stemmed from an investigation that had commenced a "couple of months" prior to August 2005 when Anne Cappelli, Principal Bank Examiner for the Consumer Affairs Division of the Banking Department, visited Matrix's offices to examine and conduct an audit of Matrix's books and records. According to the Order, on October 17, 2003, the Department of Labor found Matrix in violation of Connecticut law. Further, on or about March 7, 2005, the Commissioner of the State of Connecticut Department of Labor filed suit against Matrix in Connecticut state court based on allegations that Matrix had failed to pay employees overtime wages. Westport states that had this information been disclosed, "Westport would have likely conditionally nonrenewed the account and excluded that client."

In his deposition, Laschever indicated that he was not trying to be deceptive in how he answered question 1 in the Application. Rather, he contended he did not disclose this action because he determined, after consulting with "the lawyers," that Matrix was not a "financial institution."

### IV. Westport Underwriting Guidelines

Westport issues guidelines to aid its underwriting decisions. The Guidelines

7

effective in May 2005 asked:

> Has any action (including any pending action) been taken against any applicant lawyer for disbarment, suspension, reprimand, or any other disciplinary action? Indicate YES or NO.
>
> If Yes, provide a copy of the action pending or taken by the disciplinary body. The information should include the date, description and current status of the disciplinary action. It is generally acceptable if the disciplinary action resulted from non-payment of state bar association dues as a result of the lawyer's oversight. Any new suspension or disbarment must be referred to Westport. <u>Disciplinary actions may make the risk undesirable and a declination may be in order</u>.

Westport's Guidelines further indicate concerning regulatory review and/or regulatory action that:

> Regulatory review and/or regulatory action may be as a result of financial or other difficulties. These cases tend to be complex and expensive to defend. A YES answer is a Westport referral. If YES, referral level 4, over-ride level 5.

Lang testified that "level 4" means a "senior level underwriter" and that "level 5" means a "senior vice president of underwriting."

Lang further testified that "if an application in and of itself is or may not be fully completed or there is additional information that may be required, [Westport] would typically go back and request clarification in order to complete ... that application." The Guidelines provide that "the completion of the application is paramount to the underwriting process." Lang stated that nothing in the Guidelines prevents an underwriter from investigating applicants or the information provided in an application.

**V.   Westport's Attempted Rescission of Laschever's Policy**

By letter dated December 22, 2005, Westport sought to rescind the policy issued

8

to Laschever. In that letter, counsel for Westport indicated to Laschever that Westport sought to rescind the policy in light of the Laschever's alleged misrepresentations on his Application related to the Connecticut Department of Banking investigation and the Keith Demand. Westport offered to return Laschever's paid policy premium if he would accept rescission. Westport contends that Laschever rejected this offer.

## DISCUSSION

**I.    Motion to Strike**

Before addressing the merits of the case, the Court must resolve the scope of the record before it. National City moves to strike several exhibits to Westport's motion for summary judgment because, National City alleges, they would not be admissible at trial insofar as they (1) are not included with an affidavit that would provide factual support to the exhibits, (2) are not properly authenticated or (3) are inadmissible hearsay.

Federal Rule of Civil Procedure 56(a) provides that a "party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Local Rule of Civil Procedure 56(a) requires that a motion for summary judgment be accompanied by a statement of facts for which there is no genuine issue to be tried. Each such fact must be supported by "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local R. Civ. Pro. 56(a)3. Thus, the only limit on the evidence offered in support (or opposition) to a motion for summary judgment is that it would be admissible at trial.

To the extent that National City argues that certain of plaintiff's exhibits should be stricken for failing to be offered via an affidavit, National City's argument is not supported by the applicable rules of civil procedure. It remains necessary, however, to determine how the various rules of evidence apply to the evidence proffered by plaintiff.

National City contends that Exhibits D-H, L, M, O, P, Q and S must be authenticated pursuant to rule 901 of the Federal Rules of Evidence and that plaintiff must offer an excuse as to why original writings have not been offered pursuant to Federal Rule of Evidence 1002. National City further argues that Exhibits D-H, L, O, P and Q are inadmissible hearsay under rule 802 of the Federal Rules of Evidence and that Exhibits G, H, M, P, Q and S are irrelevant and inadmissible pursuant to rule 402 of the Federal Rules of Evidence.

Rule 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A party's production of a document implicitly authenticates that document to satisfy rule 901. See United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982) ("Just as [defendant] could have identified the records by oral testimony, his very act of production was implicit authentication."); John Paul Mitchell Sys. v. Quality King Distribs., Inc., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000). Therefore, Exhibits D, E, F and G require no authentication.

In light of the certification included with Exhibit O, a deposition of defendant Laschever, the Court finds that it is properly authenticated. As to the other exhibits, the Court will address those below.

Rule 1002 requires that "[t]o prove the content of a writing, recording, or

photograph, the original writing, recording, or photograph is required...." Rule 1003 further provides that a duplicate may substitute for an original except where a genuine issue of authenticity arises or it would be unfair to allow the duplicate to be introduced. The burden of showing that a genuine issue of authenticity as to a duplicate falls on the opponent to the evidence's admission. See United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988). Because National City has failed to make any specific allegation as to why the proffered duplicates may not be admissible under rule 1003, the Court concludes that they are admissible duplicates.

Because Exhibits G, H and P were created after the relevant time period, they are irrelevant to plaintiff's case and therefore not admissible pursuant to rule 402. The Court, however, will take judicial notice of certain publicly available facts within those documents.

Finally, contrary to National City's contentions, Exhibits D, E, F and L are not hearsay insofar as they are not being proffered as truth of the matter asserted therein. In addition, the Court finds that it would be inequitable to strike Exhibit O as hearsay. While hearsay evidence is admissible as a statement by a party-opponent, it may not be offered as a statement of a party-opponent to a party's co-defendant. In this case, however, plaintiff's motion for summary judgment is directed to defendant Laschever and National City is responding, either implicitly and explicitly, on Laschever's behalf. It would be unfair to plaintiff if it could not use Laschever's statements in support of its motion for summary judgment because National City, and not Laschever, has responded. Therefore, the Court will admit Exhibit O pursuant to rule 807.

The Court will also take judicial notice of the facts contained within Exhibits L, M,

11

Q, R and S as they represent facts available to the public and are easily verifiable.

In light of the above discussion, the Court will grant in part and deny in part National City's motion to strike and strike Exhibits G, H and P.

## II. Motion for Summary Judgment

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 249.

Plaintiff moves for summary judgment against defendant Laschever on the grounds that the evidence demonstrates that Laschever made multiple knowing and material misrepresentations in his insurance application and failed to disclose certain salient facts. Further, had Laschever disclosed these facts, Westport would not have

12

issued the Policy in favor of Laschever. National City opposes Westport's motion, contending that Laschever's omissions on the Application were not knowingly made and that Westport failed to investigate Laschever's Application before issuing the Policy. Moreover, National City argues that Westport has failed to establish that it substantially relied on the alleged-misrepresentations.

### A. Standard for Rescission

Under Connecticut law, an insurance policy may be voided by the insurer if the insurer can establish that there was (1) a misrepresentation by the insured on the application which was (2) knowingly made and (3) material to the insurer's decision whether to insure. Pinette v. Assurance Co. of Am., 52 F.3d 407, 409 (2d Cir. 1995). An omission may qualify as a misrepresentation. See Pacelli Bros. Transp., Inc. v. Pacelli, 189 Conn. 401, 407 (1983) ("The intentional withholding of information for the purpose of inducing action has been regarded ... as equivalent to a fraudulent misrepresentation.").

For a misrepresentation to be made knowingly, it is necessary that the misrepresenting party know that he is making a false statement. Pinette, 52 F.3d at 409. Misrepresentations based on ignorance, negligence or mistake do not reach the standard necessary for rescission in Connecticut. Middlesex Mut. Assurance Co. v. Walsh, 218 Conn. 681, 692 (1991). Therefore, misrepresentation is only made knowingly when the insured submits an answer to a question "other than that which he has reason to believe is true." Mt. Airy Ins. Co. v. Millstein, 928 F. Supp. 171, 175 (D. Conn. 1996).

Connecticut law further requires that the misrepresentation be material to the

13

issuance of the insurance policy.  The Connecticut Supreme Court has previously held that an answer is "material to the consideration of a contract of insurance when, in the judgment of reasonably careful and intelligent persons, it would so increase the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of premium."  Davis-Scofield Co. v. Agric. Ins. Co., 109 Conn. 673, 678 (1929).  An answer to a question asked on an insurance application is presumptively material.  See State Bank & Trust Co. v. Conn. Gen. Life Ins. Co., 109 Conn. 67, 70 (1929) ("Where the representation is contained in an answer to a question contained in the application which is made a part of the policy the inquiry and answer are tantamount to an agreement that the matter inquired about is material.").  An applicant's prior loss history would be material to an insurance company's decision whether to provide insurance and the determination of a premium to be paid so long as the effect is substantial.  See Pinette, 52 F.3d at 411.

Westport alleges that Laschever knowingly misrepresented the status of the Keith lawsuit and related Grievance, the Philadelphia policy rescission, the Connecticut Department of Labor Lawsuit and the Connecticut Department of Banking Suspension Order.  National City counters that in each of these situations, the evidence fails to demonstrate the required scienter.

### B.     Keith Demand

Westport contends that the evidence demonstrates that Laschever made a material misrepresentation on the Application by not including the Keith Demand in the Application or notifying Westport when these issues arose.

National City does not dispute that the "demand" in Norris's letter was the type of

14

claim that would have to have been disclosed pursuant to question 11 of the Application. Instead, National City counters, among other arguments, that there is a issue of material fact as to whether Laschever notified Westport of the Keith Demand in a timely fashion.

Laschever submitted the Application on May 20, 2005. On July 1, he was made aware of the Keith Demand. The policy became effective on July 17. The "Reporting and Notice" section of the Policy provides:

> As a condition precedent to coverage under this COVERAGE UNIT, if a CLAIM is made against any INSURED, or if any INSURED becomes aware of any CLAIM, the INSURED(S) shall, as soon as practicable, but no later than sixty (60) days after the termination of the POLICY PERIOD, provide written notice to the Company.

This affirmation requires that the applicant/insured notify Westport of any claims before the policy becomes effective. One way to read this affirmation is that prior to the policy taking effect, the applicant/insured must notify Westport of any claims. An alternative reading, however, would allow the policy to commence so long as the insured notifies Westport "as soon as practicable" of the existence of any claims. See Travelers Ins. Co. v. Namerow, 261 Conn. 784, 796 (2002) (ambiguous language in an insurance policy is construed in favor of the insured). This ambiguity creates a material issue of fact with respect to this notice requirement.

Insofar as a reasonable jury may find Laschever's notice timely, summary judgment is not appropriate upon this ground. If Laschever notified Westport "as soon as practicable," he is excused from making a material omission in not notifying Westport as soon as the Keith Demand was made.

15

## C. Keith Grievance

Westport next contends that the Grievance is grounds for rescission. Because the timeline on the Grievance mirrors that of the Keith Demand, rescission is inappropriate on this issue.

## D. Philadelphia Rescission Action

Westport alleges that the previous suit by Philadelphia regarding Laschever's professional insurance policy should have been included in the Application and Laschever's failure to include it is grounds for rescission. National City argues that (1) Laschever had disclosed the existence of the Philadelphia suit on a previous Westport application and therefore did not have to disclose it on the Application; (2) the Philadelphia action did not have to be reported to Westport in light of its dismissal; (3) the information of the Philadelphia action was publicly available; and (4) the Guidelines do not establish that had Laschever disclosed the Philadelphia action, that Westport would not have issued the Policy.

As to National City's first argument, a review of the previous application demonstrates that Laschever did not disclose the rescission action. Rather, he had disclosed a claim made on the Philadelphia policy and omitted the rescission itself.[3]

Further, National City argues that Westport should have known about the rescission because of Laschever's disclosure of the claim and because the rescission action was a matter record. These arguments are misplaced. Westport has no duty to

---

[3] National City recognized this distinction when it wrote in its opposition to summary judgment that the Philadelphia action was "similar to the claim that Laschever did disclose on his original application with Westport involving Scott Savoie and Kevin Vaughan."

16

independently investigate the veracity of responses made in an application. Variety Homes, Inc. v. Postal Life Ins. Co., 287 F.2d 320, 323 (2d Cir. 1961) (construing Connecticut law and observing that an insurer is entitled to rely on the representations of the insured); see also Beckwith v. Ryan, 66 Conn. 589, 596 (1895) ("Counsel for the plaintiff urged in argument that the defendant did not act with sufficient promptness in ascertaining the falsity of the statement relied on. If in fact the defendant believed the statement, it would hardly be claimed that he was under an obligation to investigate the truth of a statement he believed and acted upon."). The fact that the Philadelphia action may have been part of the public record does not alleviate the duty of Laschever not to conceal it.

In arguing that the Philadelphia rescission action was not material, National City alleges that Westport demonstrated that such action was immaterial when it approved the Application even though it knew of the claim on the Philadelphia policy. National City conflates the rescission action and the claim against the policy. While the claim may not have been material, it is distinct from Philadelphia's action for rescission.

A prior rescission of an insurance policy is material to the issuance of a new policy to an insured. See Pinette, 52 F.3d at 411 (recognizing that applicant's loss history is material to insurer's decision whether to insure); cf. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 13 (2d Cir. 1986) (addressing maritime law).

Finally, although Lang, Westport's underwriter, has stated that Westport would not have issued the policy to Laschever had it known of the prior rescission of insurance by Philadelphia, the Court is hesitant to grant summary judgment relying solely on an underwriter's hindsight-view of the process. Without firmer evidence of

what Westport would do in similar circumstances, this Monday morning quarterbacking cannot sufficiently establish the requisite reliance. See Paul Revere Life Ins. Co. v. Fish, 910 F. Supp. 58, 67 (D.R.I. 1996) (recognizing that self-serving declarations of materiality by an underwriter have inherent credibility issues). Summary judgment is thus inappropriate based on the Philadelphia rescission.

### E. Connecticut State Agencies' Actions

These reliance issues also doom Westport's demand for summary judgment on account of the misrepresentations related to the actions of the Connecticut Departments of Banking and Labor. Even accepting Westport's other allegations as true and assuming that it has met its standard for establishing a knowingly-made material misrepresentation, the Court cannot conclude, on the basis of Lang's deposition alone, that Westport would not have provided insurance coverage to Laschever. This conclusion is buttressed by the fact that the Guidelines specify only that answering "yes" to the question regarding regulatory review or action only requires a referral to a higher level of underwriter. An affirmative answer does not, according to the Guidelines, necessarily result in the rejection of the insurance application. Therefore, a reasonable jury may conclude that Westport did not rely on Laschever's misrepresentation and summary judgment is inappropriate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant National City's motion to strike (Doc. #64) as to Exhibits G, H and P but otherwise DENIES the motion. The Court DENIES plaintiff's motion for summary judgment (Doc. #54).

Dated at Bridgeport, Connecticut, this 26th day of September, 2008.

                                             /s/
                                    Warren W. Eginton
                                    Senior United States District Judge